Filed 1/13/26  P. v. Swinney CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARL SWINNEY,<br><br>    Defendant and Appellant. | B337460<br><br>(Los Angeles County<br>Super. Ct. No. XCNBA450026-01) |

APPEAL from an order of the Superior Court of Los Angeles County.  H. Clay Jacke II, Judge.  Affirmed.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Carl Swinney appeals the denial of his petition for resentencing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2019, a jury found Swinney guilty of the first degree murder of Daren Clark. (Pen. Code,[1] §§ 187, subd. (a), 189.) The jury also found true the special allegation that the murder was committed while Swinney was engaged in the commission of a robbery and/or burglary. (§ 190.2, subd. (a)(17).) The trial court sentenced Swinney to life in prison without the possibility of parole.

In 2023, Swinney filed a petition for resentencing under section 1172.6. The trial court appointed counsel, received briefing, and held a hearing to determine Swinney's prima facie eligibility for relief. The court denied the petition, finding Swinney was ineligible as a matter of law because he could still be convicted under the law today, as he had been tried under a felony murder theory that complied with the 2019 changes in the law of felony murder. Swinney appeals.

For context only, we recite facts and evidence presented at trial from our opinion affirming Swinney's conviction. (*People v. Swinney* (Nov. 17, 2020, B299452) [nonpub. opn.].) On April 8, 2016, Clark was killed in the laundromat where he worked. (*Ibid.*) Clark died from multiple blunt force trauma to the head; he suffered a subdural hemorrhage, five separate lacerations to his head and scalp, injuries to both sides of his scalp, multiple abrasions on both sides of his face, bruises on his face and head, and lacerations inside his mouth. (*Ibid.*) He had abrasions on his hands and legs from being bound with plastic ligatures.

---

[1]     Undesignated statutory references are to the Penal Code.

(*Ibid.*)  His position, face-down and bound, may have hastened his death but did not cause it.  (*Ibid.*)

An ATM inside the laundromat had been severely damaged: its locked exterior door had been pried open, and there were pry marks on a slot where the money was dispensed.  (*People v. Swinney*, *supra*, B299452.)  There were pry marks on a coin exchanging machine affixed to the laundromat wall.  (*Ibid.*)  Swinney's blood was found on the floor adjacent to the ATM, on the interior surface of the ATM door, and on currency left inside the machine.  (*Ibid.*)

Swinney was arrested and placed in a monitored jail cell with a police operative posing as another arrestee.  (*People v. Swinney*, *supra*, B299452.)  In a recorded conversation, Swinney told the operative the incident was a robbery and took credit for the crime, stating it was his idea and not his co-participant's plan.  (*Ibid.*)  Clark "wasn't supposed to die," Swinney said.  (*Ibid.*)  They had tied Clark up with his arms and feet together.  (*Ibid.*)  Swinney said he did not know how Clark died, as "[unintelligible] only hit the [n—] in the head a couple of times.  Fuck, that fool dead."  (*Ibid.*)

The operative commented, "[Y]ou must have a fucking hard-ass punch if you [unintelligible] punch somebody in the head."  (*People v. Swinney*, *supra*, B299452.)

"Crazy," responded Swinney.  (*People v. Swinney*, *supra*, B299452.)

The operative said, "So it was fast.  It wasn't like you had time to get out.  It was just one hitter quitter."  (*People v. Swinney*, *supra*, B299452.)

"Yeah," Swinney said.  (*People v. Swinney*, *supra*, B299452.)

"Not that serious," said the undercover operative. (*People v. Swinney*, *supra*, B299452.)

Swinney agreed it was "not that bad but . . . it's just the way that n— was." (*People v. Swinney*, *supra*, B299452.) Swinney told the operative he had checked on Clark, and there was "no response." (*Ibid.*) Swinney said he had stolen the recording system from the laundromat, so he was confident the police had no camera images of him. (*Ibid.*) Swinney said he "robbed the ATM" and cut himself in the process, causing himself to bleed substantially. (*Ibid.*) After the police collected his DNA, Swinney told the operative, "It's over, bro. They got me." (*Ibid.*)

After the close of evidence, the trial court instructed the jury on first degree felony murder and second degree murder.[2] The jury was instructed on felony murder in conjunction with the first degree murder charge only. The jury was instructed on the natural and probable consequences doctrine only in the instruction on second degree murder.

Specifically, the jury was instructed with CALCRIM No. 540A, "Felony-Murder: First Degree—Defendant Allegedly Committed Fatal Act," in relevant part as follows: "The defendant is charged in Count 1 with first degree murder, under a theory of felony murder. [¶] To prove that the defendant is guilty of first degree murder under this theory, the People must prove that: [¶] 1. The defendant committed robbery or burglary;

---

[2]    We grant the People's request that we take judicial notice of one minute order, the jury instructions, and the verdict form from the record of his prior appeal, case No. B299452. On our own motion, we also take judicial notice of the transcript of the prosecutor's rebuttal closing argument, as Swinney discusses it extensively in his briefing. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

4

[¶] 2.  The defendant intended to commit robbery or burglary; [¶] AND [¶] 3.  While committing robbery or burglary, the defendant caused the death of another person."

The jury was also instructed with CALCRIM No. 540B, "Felony Murder: First Degree—Coparticipant [A]llegedly Committed Fatal Act," which read, as relevant here, "The defendant may also be guilty of murder, under a theory of felony murder, even if another person did the act that resulted in the death.  I will call the other person the *perpetrator*. [¶] To prove that the defendant is guilty of first degree murder under this theory, the People must prove that: [¶] 1.  The defendant committed robbery or burglary; [¶] 2.  The defendant intended to commit robbery or burglary; [¶] AND [¶] 3.  While committing robbery or burglary, the defendant or the perpetrator caused the death of another person."

The instruction also provided, "In order to prove felony murder for a defendant who is not the actual killer but who is guilty of first degree murder as an aider or abettor, the People must prove that either the defendant intended to kill, or the People must prove all of the following: [¶] 1.  The defendant's participation in the crime began before or during the killing; [¶] 2.  The defendant was a major participant in the crime; [¶] AND [¶] 3.  When the defendant participated in the crime, he acted with reckless indifference to human life. [¶] A person acts with reckless indifference to human life when he knowingly engages in criminal activity that he knows involves a grave risk of death."

CALCRIM No. 540B continued, "If you decide that the defendant is guilty of first degree murder, but you cannot agree whether the defendant was the actual killer, then, in order to find these special circumstances true, you must find either that

5

the defendant acted with intent to kill or you must find that the defendant acted with reckless indifference to human life and was a *major participant* in the crime. When you decide whether the defendant was a *major participant*, consider all the evidence. Among the factors you may consider are: [¶] 1. What role did the defendant play in planning the criminal enterprise that led to the death? [¶] 2. What role did the defendant play in supplying or using lethal weapons? [¶] 3. What awareness did the defendant have of particular dangers posed by the nature of the crime, any weapons used, or past experience or conduct of the other participant? [¶] 4. Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder? [¶] 5. Did the defendant's own actions or inactions play a particular role in the death? [¶] 6. What did the defendant do after lethal force was used? [¶] No one of these factors is necessary, nor is any one of them necessarily enough, to determine whether the defendant was a major participant."

With regard to the special circumstances, jurors were instructed by CALCRIM No. 703 that if they found Swinney to be guilty of first degree murder but was not the actual killer, then "when you consider the special circumstance of murder during [a] robbery or burglary, you must also decide whether the defendant acted either with intent to kill or with reckless indifference to human life." [¶] In order to prove these special circumstances for a defendant who is not the actual killer but who is guilty of first degree murder as an[] aider or abettor, the People must prove either that the defendant intended to kill, or the People must prove all of the following: [¶] 1. The defendant's participation in the crime began before or during the killing; [¶] 2. The defendant was a major participant in the crime; [¶] AND [¶] 3. When the

6

defendant participated in the crime, he acted with reckless indifference to human life. [¶] A person *acts with reckless indifference to human life* when he knowingly engages in criminal activity that he knows involved a grave risk of death."

This instruction also advised the jury that the People did not have to prove the actual killer acted with the intent to kill or with reckless indifference to human life in order for the special circumstances to be true. The instruction continued, "If you decide that the defendant is guilty of first degree murder, but you cannot agree whether the defendant was the actual killer, then, in order to find these special circumstances true, you must find either that the defendant acted with intent to kill or you must find that the defendant acted with reckless indifference to human life and was a *major participant* in the crime. When you decide whether the defendant was a *major participant*, consider all the evidence. Among the factors you may consider are: [¶] 1. What role did the defendant play in planning the criminal enterprise that led to the death? [¶] 2. What role did the defendant play in supplying or using lethal weapons? [¶] 3. What awareness did the defendant have of particular dangers posed by the nature of the crime, any weapons used, or past experience or conduct of the other participant? [¶] 4. Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder? [¶] 5. Did the defendant's own actions or inactions play a particular role in the death? [¶] 6. What did the defendant do after lethal force was used? [¶] No one of these factors is necessary, nor is any one of them necessarily enough, to determine whether the defendant was a major participant."

CALCRIM No. 703 concluded, "If the defendant was not the actual killer, then the People have the burden of proving beyond

7

a reasonable doubt that he acted with either the intent to kill or with reckless indifference to human life and was a major participant in the crime for the special circumstances of murder during robbery or burglary to be true. If the People have not met this burden, you must find these special circumstances have not been proved true."

In rebuttal closing argument, the prosecutor said, "[W]hat the defense wants you to believe is that because there's no direct evidence that he gave the final killing blow, that he is somehow not guilty of all the charges, that's frankly not true factually and it's not true legally. [¶] I'm telling you, based upon all the evidence, that [the other prosecutor] and I believe he is the actual killer. You can't separate out the killing blow, okay. But even if he's not the actual killer, for example, if this was a homicide with a gun case, say it's the most stereotypical robbery where someone goes into a liquor store and they kill the clerk and then the other guy is also charged with murder. So in that case, obviously, the killing blow would be the gunshot wound. We don't have that in this case. What we have is a group beating. [¶] But let's say that he is not the actual killer, which is not true. That's not what we are arguing. But even if he was not, under both the felony murder rule and the special circumstance for the robbery and burglary special circumstance, he is still good for the felony murder and the special circumstances because he was a major participant who acted with reckless indifference to human life. And that is not our theory of the case. [¶] But what I'm saying is that even if you believe that, he's still guilty even under their own theory as to what happened."

The jury convicted Swinney of first degree murder and found the special circumstance true. (*People v. Swinney, supra*, B299452.) We affirmed the judgment on appeal. (*Ibid*.)

## DISCUSSION

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished this by amending sections 188 and 189. (Stats. 2018, ch. 1015, § 2, 3; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) Senate Bill 1437 also created former section 1170.95 (now codified as section 1172.6), which established a procedure by which defendants convicted of murder under prior law may petition for resentencing in the trial court if they believe they could not be convicted of that crime after the amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4.)

Petitions under section 1172.6 address convictions where a defendant was not the killer but was held vicariously liable on one of several theories of liability identified in the statute. (*Lewis, supra*, 11 Cal.5th at pp. 957, 967.) Once a petition is filed, after appointment of counsel and briefing, the trial court assesses whether petitioner has made a prima facie case for relief. The prima facie inquiry is limited: The court, accepting the petition's factual allegations as true, makes a " ' "preliminary assessment" ' " whether the petitioner would be entitled to relief if those allegations were proven. (*Id*. at p. 971.) In assessing

9

whether a defendant has made a prima facie case, the trial court is entitled to review the record of conviction, which includes the jury summations, jury instructions, verdict forms, and prior appellate opinions. (*Id.* at pp. 971–972; *People v. Lopez* (2022) 78 Cal.App.5th 1, 13 (*Lopez*).) Although appellate opinions are generally considered part of the record of conviction, the prima facie bar was intentionally set very low and the probative value of an appellate opinion is case-specific; a trial court should not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972.)

If the record establishes ineligibility for resentencing as a matter of law, the petition is properly denied at the prima facie stage. (*Lewis, supra*, 11 Cal.5th at pp. 970–972; *Lopez, supra*, 78 Cal.App.5th at p. 14.) However, the petition and record must establish conclusively that the defendant is ineligible for relief. (*Lopez*, at p. 14.) When a trial court denies a section 1172.6 petition based on the failure to make a prima facie case for relief, our review is de novo. (*Ibid.*)

We conclude Swinney is ineligible for resentencing under section 1172.6 as a matter of law. Section 1172.6 was designed to provide relief to defendants who were or could have been convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter under *prior* law. (*Lewis, supra*, 11 Cal.5th at p. 957.) But Swinney was tried and convicted in May 2019, after the effective date of Senate Bill 1437's changes to the law of felony murder. The prosecution could not have proceeded under the former version of felony

10

murder law or murder with imputed malice because the law had already changed by the time Swinney was tried. Indeed, the felony-murder instructions given here reflected the change in the law by requiring that if the jury found Swinney was not the actual killer, then in order to find him guilty of first degree felony murder it would have to conclude he intended to kill or was a major participant in the underlying felony and acted with reckless indifference to human life. Because Swinney was tried under the new law of felony murder, he already received the benefits of Senate Bill 1437, and he is ineligible for relief under section 1172.6. (*People v. Reyes* (2023) 97 Cal.App.5th 292, 298–299).

Moreover, Swinney is ineligible for resentencing because the jury made its special circumstance finding that he intended to kill or was a major participant who acted with reckless indifference to human life after the decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. "[F]indings made after *Banks* and *Clark* ordinarily establish a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude the defendant from making a prima facie case for relief. If a jury has determined beyond a reasonable doubt that a defendant was a major participant who acted with reckless indifference to human life, as those phrases are now understood and as the Legislature intended them to be understood when incorporating them into Penal Code section 189, then that defendant necessarily could still be convicted of murder under section 189 as amended." (*People v. Strong* (2022) 13 Cal.5th 698, 710; see also *People v. Farfan* (2021) 71 Cal.App.5th 942, 955–956 [appellant ineligible for resentencing because jury's post-*Banks* and *Clark* "robbery-murder special circumstance finding

11

constitutes a valid finding beyond a reasonable doubt that appellant had the intent to kill or was a major participant in the robbery who acted with reckless disregard for human life"].)

Swinney, however, contends it was possible he was convicted on a now-invalid theory of murder because the jury could have convicted him of felony murder without finding he personally killed the victim.  This argument is based on *Lopez*, in which the court of appeal held that for a defendant to be liable for felony murder as the actual killer under section 189, subdivision (e)(1), the jury must find that he personally killed the victim, not merely that he did an act that caused the victim' death.  (*Lopez, supra*, 78 Cal.App.5th at p. 19.)  As given in *Lopez*, CALCRIM Nos. 540A and 730 stated that for Lopez to be guilty of felony murder, the People were only required to prove he had caused the death of another person, not that he had personally killed another person; and therefore the record of conviction did not establish as a matter of law that the jury found he had personally killed the victim.  (*Ibid.*)

This case differs from *Lopez* in a crucial respect.  In *Lopez*, "[t]he jury was not instructed on liability by virtue of defendant having been a major participant in the underlying felony." (*Lopez, supra*, 78 Cal.App.5th at p. 15.)  But here the court gave CALCRIM No. 540B, which told the jurors that if they did not believe that Swinney actually killed Clark, or if some believed he did while others did not, then for Swinney to be guilty of first degree felony murder without being the actual killer the People had to prove that either he intended to kill or that his participation in the crime began before or during the killing, he was a major participant in the crime, and he acted with reckless indifference to human life.  Accordingly, the record of conviction

12

establishes that the jury necessarily found that Swinney actually killed Clark, intended to kill him, or was a major participant in the crime and acted with reckless indifference to human life.  No matter which basis the jury relied on, the record conclusively demonstrates that "murder liability [wa]s not imposed on a person who [wa]s not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); *Lewis*, *supra*, 11 Cal.5th at p. 959.)  As Swinney is ineligible for resentencing as a matter of law, the petition was properly denied at the prima facie stage.  (*Lopez*, at p. 14.)

Swinney also asserts the prosecutor told the jury "that jurors could find appellant guilty as an aider and abettor" and "conced[ed] that it was not possible to separate out the 'killing blow' and that what occurred was a 'group beating,' " so "it was probable the jury, relying on an actual killer theory, did not find appellant the one who actually, personally killed the victim." Our review of the portion of the prosecutor's rebuttal argument to which Swinney directs us indicates that the prosecutor did not argue aiding and abetting.  The prosecutor told the jury the People's theory was that Swinney was the actual killer; and then, arguing in the alternative, he contended that even if the jury did not believe Swinney was the actual killer, he was nonetheless guilty of felony murder because he was a major participant in the felony who acted with reckless indifference to human life.  Both theories are consistent with the law of felony murder after the changes made by Senate Bill 1437.  (§ 189, subd. (e).)

As Swinney notes, the prosecutor did concede at the prima facie hearing on the resentencing petition that the jury instructions had left room for the jury to convict Swinney on an aiding and abetting theory. The jury was not instructed with any of the CALCRIM 400 series instructions concerning aiding and abetting or natural and probable consequences, nor was aiding and abetting defined in the instructions that were given. Swinney points out the phrase "aider and abettor" appeared in CALCRIM Nos. 540B and 703, but in both instructions it was used to describe a person who was not the actual killer and was immediately followed by the requirement that the defendant either intended to kill or was a major participant who acted with reckless indifference. As given, CALCRIM No. 540B stated, "In order to prove felony murder for a defendant who is not the actual killer but who is guilty of first degree murder as an aider or abettor, the People must prove either that the defendant intended to kill, or the People must prove all of the following: [¶] 1. The defendant's participation in the crime began before or during the killing; [¶] 2. The defendant was a major participant in the crime; [¶] AND [¶] 3. When the defendant participated in the crime, he acted with reckless indifference to human life." Similarly, CALCRIM No. 703 as given here provided, "If you decide that the defendant is guilty of first degree murder but was not the actual killer, then when you consider the special circumstance of murder during [a] robbery or burglary, you must also decide whether the defendant acted with intent to kill or with reckless indifference to human life." Therefore, even if, as Swinney posits, the jury did not believe he personally killed Clark but formed an aiding and abetting theory, the jury could not have convicted him and found true the special circumstance

14

without finding he intended to kill or was a major participant who acted with reckless indifference.  These findings make Swinney ineligible for resentencing as a matter of law.

Swinney also argues that if the jury convicted him on an aiding and abetting theory, he was not convicted on a now-valid theory of murder because the jury was not instructed it had to find Swinney aided and abetted the perpetrator's conviction of murder and could have found only that he aided and abetted the robbery or burglary.  Whether the actus reus of first degree felony murder under an aiding and abetting theory (§ 189, subd. (e)(2)) requires that a defendant who is not the actual killer need only aid in the underlying felony and not in the killing itself is presently before the California Supreme Court in *People v. Morris* (2024) 100 Cal.App.5th 1016, review granted July 17, 2024, S284751.  Like the majority of the courts that have addressed this question, we conclude the actus reus required for those who possess the intent to kill is unchanged by the amendments to the felony murder rule and remains simply aiding the underlying felony that results in murder.  (*People v. Taito* (2025) 115 Cal.App.5th 694, 703–707; *Morris*, at p. 1020; *People v. Lopez* (2024) 104 Cal.App.5th 616, 619, review granted Nov. 13, 2024, S287162; *People v. Lopez* (2023) 88 Cal.App.5th 566, 578; but see *People v. Kelly* (2024) 105 Cal.App.5th 162, 173, review granted Nov. 26, 2024, S287341 [defendant must aid, abet, or assist in the killing]; *People v. Jackson* (2025) 110 Cal.App.5th 128, 167–168, review granted June 11, 2025, S290577 [same].)  To convict Swinney of felony murder and to find the special circumstance allegation true without concluding he was the actual killer, the jury necessarily found either that he intended to kill or that he was a major participant acting with reckless indifference to

15

human life. Therefore, the record conclusively establishes that Swinney was the actual killer, acted with the intent to kill, or was a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 1, subd. (f); *Lewis*, *supra*, 11 Cal.5th at p. 959.)

Because Swinney's record of conviction conclusively establishes he is ineligible for resentencing as a matter of law, the trial court properly denied his petition for resentencing at the prima facie stage. (*Lewis, supra*, 11 Cal.5th at pp. 970–972.)[3]

## DISPOSITION

The order denying Swinney's section 1172.6 resentencing petition is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, P. J.

We concur:

WILEY, J.                    VIRAMONTES, J.

---

[3] Swinney also argues that the trial court's denial of the petition violated his due process rights. Given our conclusion that he is ineligible for relief as a matter of law, the argument necessarily fails. (*People v. Fisher* (2023) 95 Cal.App.5th 1022, 1030, fn. 7.)

16